[No. B232709. Second Dist., Div. Five. July 12, 2011.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RODERICK WRIGHT, Real Party in Interest.

**COUNSEL**

Steve Cooley, District Attorney, Irene Wakabayashi and Shirley S. N. Sun, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Strumwasser & Woocher, Fredric D. Woocher, Byron F. Kahr; and Winston Kevin McKesson for Real Party in Interest.

**OPINION**

**KUMAR, J.**[*]—Elections Code[1] section 2026 provides, "The domicile of a Member of the Legislature . . . shall be conclusively presumed to be at the residence address indicated on that person's currently filed affidavit of [voter] registration." The statute was enacted to allow elected officials to obtain a residence near Sacramento yet maintain, for voting purposes, their home district residence as their domicile. The question before us is whether this conclusive presumption applies even if the address listed on the affidavit of registration is not one of the legislator's legal residences. We conclude it does not and grant the People's petition for writ of mandate.

## I. BACKGROUND

On March 14, 2007, real party in interest, Roderick Wright, filed a voter registration form in which he declared under penalty of perjury that he "liv[ed]" in one of five units at an apartment complex on Glenway Drive in the City of Inglewood. The property was in the 25th Senatorial District (the

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All statutory references are to the Elections Code unless otherwise indicated.

District). In November 2008, Wright was elected as the state senator to represent the District. Thereafter, he cast votes in the District on two occasions—May 19 and September 1, 2009.

There was substantial evidence presented to the grand jury supporting the People's theory that, when Wright cast those votes, he owned and rented the Glenway property to others while he lived in the 26th Senatorial District—at a residence on Don Milagro Drive. That evidence included, but was not limited to, the following: (1) although an occupant of the unit Wright specified as his residence (Wanda Sanders) testified Wright shared a room with a female, the bedding in the room was "off pink" and the closet contained only the belongings of a woman; (2) Sanders eventually told an investigator that Wright did not live at the Glenway address; (3) a tenant in one of the units at the Glenway complex indicated Wright lived on Don Milagro Drive and was only seen at the apartment building to retrieve rent; (4) the electric bill for the common areas at the Glenway property was sent to Wright at an address on Don Milagro Drive; (5) Wright held title to his Don Milagro Drive residence; (6) a search of the Don Milagro Drive residence revealed numerous personal items and clothes belonging to Wright; and (7) Assembly and Senate records never listed the Glenway property as Wright's home address.

Because the evidence presented to the grand jury demonstrated probable cause that, as a state senator, Wright voted in the District while he was domiciled outside of the District, he was indicted for, inter alia, two counts (counts 7 and 8) of casting a fraudulent vote in violation of section 18560, subdivision (a). He filed a motion to dismiss the charges pursuant to Penal Code section 995. The basis for the motion was that, prior to casting the votes at issue, Wright completed a voter registration form wherein he listed as his residence an address located in the District, i.e., the Glenway address. It was Wright's primary position that, irrespective of evidence that he did not reside in the District when he voted, he could not be prosecuted for these offenses because section 2026 provided a conclusive presumption that the domicile of a member of the Legislature is deemed to be that which is indicated on the legislator's affidavit of voter registration.

The trial court reluctantly dismissed those charges, finding it was bound by the conclusive presumption. The People filed a petition for writ of mandate on May 2, 2011, and, on May 9, 2011, we issued an order to show cause directing respondent to address why the relief prayed for in the petition should not be granted.

## II.  DISCUSSION

### A.  *Standard of Review*

"When we review a [Penal Code] section 995 motion, we . . . conduct an independent review of the evidence . . . . [Citation.] We will not set aside an information [or an indictment] 'if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' [Citation.]" (*People v. San Nicholas* (2004) 34 Cal.4th 614, 654 [21 Cal.Rptr.3d 612, 101 P.3d 509]; see also *People v. Superior Court (Costa)* (2010) 183 Cal.App.4th 690, 698–699 [107 Cal.Rptr.3d 576].)

### B.  *The Conclusive Presumption*

■    Section 2026 provides, "The domicile of a Member of the Legislature . . . shall be conclusively presumed to be at the *residence* address indicated on that person's currently filed affidavit of registration." (Italics added.) The Legislature has articulated a stark difference between a person's domicile and a person's residence.

A domicile is described as a "fixed" place of habitation—one in which the person has an "intention of remaining" or, if absent, an "intention of returning." (§ 349, subd. (b).) Importantly, "[a]t a given time, a person may have *only one* domicile." (*Ibid.*, italics added.)

On the other hand, "[t]he residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining." (§ 349, subd. (c).) Thus, "[a]t a given time, a person may have *more than one* residence." (*Ibid.*, italics added.)

Reading these statutes together, the conclusive presumption set forth in section 2026 is triggered when the legislator lists one of his or her *residences* when he or she fills out the section of the voter registration form that requires the legislator to write the "ADDRESS where [the legislator] live[s]." For example, the presumption would not be triggered if the legislator were to indicate he or she lived at an address that corresponded to a local McDonald's restaurant, or the home of another in which the legislator had no fixed habitation "for some period of time" (§ 349, subd. (c)).

■    The word "residence" should not be considered in a vacuum. In fact, "the meaning of the word ['residence'] is governed by the purpose and intent of the statute in which it appears or in the context of the circumstances in issue. [Citations.]" (*People v. Horn* (1998) 68 Cal.App.4th 408, 416 [80

Cal.Rptr.2d 310].) In support of Assembly Bill No. 1798 (1983–1984 Reg. Sess.), the bill underlying section 2026, former Assembly Speaker Willie Brown explained to the Governor that the bill was designed to apply to "[l]egislators who, of necessity, spend a great amount of time away from their *true* domicile, often going so far as to purchase homes and move their families to the location of their Legislature in service of their constituents . . . ." (Assembly Speaker Willie Brown, letter to Governor George Deukmejian, Mar. 1, 1984, italics added.) Indeed, we have previously pointed out the purpose of section 2026 is to address and resolve the issue of domicile unique to certain elected officials: "While many people may choose to have more than one residence, incumbent legislators may be required by their official duties to have two residences, one in Sacramento and one in their home district." (*People v. Mayer* (2003) 108 Cal.App.4th 403, 419 [133 Cal.Rptr.2d 454].)

■ The trial court's ruling suggests *any* address listed on the affidavit as Wright's residence address would trigger the applicability of the conclusive presumption and, for voting purposes, establish that address as Wright's true domicile. This interpretation of "residence" does not comport with the purpose and intent of section 2026 and would lead to absurd results. What is conclusively presumed is not the legislator's "residence" but rather his or her "domicile." We hold this conclusive presumption applies only if the address indicated on the legislator's currently filed affidavit of voter registration is one of the legislator's legal residences.[2]

## III.  DISPOSITION

■ Because the circumstantial evidence presented to the grand jury creates a legitimate and reasonable inference that the address listed on Wright's voter registration form was not his legal residence when he cast his votes on May 19, 2009, and September 1, 2009, the trial court incorrectly applied the conclusive presumption, provided by Elections Code section 2026,

---

[2] Wright briefly argues, in the alternative that because the May 2009 election was limited to statewide ballot measures, the provisional balloting entitlement set forth in section 14310, subdivision (c)(3)(A), allowed him to cast his votes in the District regardless of whether he was domiciled in the District. The statute cited by Wright allows for a provisional ballot if a voter "claim[ed] to be properly registered" but it cannot be "immediately established" that the voter was qualified or entitled to vote. (§ 14310, subd. (a).) Here, there is an inference that Wright claimed to be properly registered to vote by simply requesting a ballot. However, given that Wright was permitted to vote, it was evidently determined (albeit as a result of Wright's inaccurate address on his voter registration form) that he was qualified or entitled to vote in the District. This is not a case where a voter's rights could not be immediately determined and, accordingly, the rules relating to provisional balloting are not applicable.

that the address was his domicile. Accordingly, we grant petitioner's writ. The trial court is ordered to reinstate the charges in counts 7 and 8.[3]

Turner, P. J., and Kriegler, J., concurred.

A petition for a rehearing was denied August 1, 2011, and the petition of real party in interest for review by the Supreme Court was denied October 19, 2011, S195745.

---

[3] We additionally find, contrary to footnote 1 in Wright's return, that the grand jury was presented with sufficient evidence Wright did not live at the Glenway residence when he cast votes in May and September of 2009. Thus, there is no need to remand the matter to require the trial court to determine whether, absent the conclusive presumption, there was sufficient evidence that Wright was not domiciled at the Glenway address when he cast those votes.